UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHSEN DORMANESH,<br>Plaintiff,<br>v.<br>MARCO RUBIO, *et al.*,<br>Defendants. | Case No. 2:25-cv-3472-DC-JDP (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Dormanesh, proceeding pro se, brings this action against defendants Marco Rubio, in his official capacity as U.S. Secretary of State, Kristi Noem, in her official capacity as U.S. Secretary of Department of Homeland Security, Kristina Kvien, in her official capacity as U.S. Ambassador to Armenia, and the Consul General of the U.S. Embassy in Yerevan for unreasonably delaying adjudication of his father's visa application. Defendants have filed a motion to dismiss or, alternatively, for summary judgment. For the reasons stated below, I recommend that defendants' motion be granted.

**Background**

**A. Statutory and Regulatory Framework**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of three broad categories of visas: family-based, employment-based, and diversity. 8 U.S.C. § 1151(a). Relevant here are family-based visas. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i),

1201(a)(1)(A); 22 C.F.R. §§ 42.21, 42.42. For a family-based immigrant visa, the sponsoring U.S. citizen must first file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and Immigration Services ("USCIS"). 8 U.S.C. § 1154. Once USCIS approves the Form I-130, it transfers the petition to the National Visa Center ("NVC") for preprocessing. The beneficiary may then begin the visa application process by submitting a DS-260 Online Immigrant Visa and Alien Registration Application. 9 Foreign Affairs Manual (FAM) § 504.1-2(a)(1)). After the beneficiary completes the DS-260 and submits all the necessary forms and fees to the NVC, the NVC determines whether an applicant is documentarily complete. 9 FAM § 504.1-2(b)(2).

Once the NVC determines an applicant is documentarily complete and the applicable consular officer completes all the "necessary clearance procedures," the applicant is considered documentarily qualified. 22 C.F.R. § 40.1(h). This means that the applicant is qualified "to apply formally for an immigrant visa." *Id.* For an immigrant visa applicant, to "[m]ake or file an application for a visa" means, in relevant part, "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on . . . Form DS-260." *Id.* § 40.1(l). The NVC schedules interviews at the applicable overseas consular post "in the chronological order of the documentarily complete applicants." 9 FAM 504.1-2(d)(1). During the interview, an applicant can formally apply for an immigrant visa by swearing to or affirming the contents of the DS-260 and signing it before a consular officer. 22 C.F.R. § 42.67(a). The INA provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Once an application is properly completed and executed before a consular officer, the officer must either issue or refuse to issue a visa. *See* 22 C.F.R. § 42.81(a).

The consular officer "may require the submission of additional information or question the alien on any relevant matter whenever the officer believes that the information provided . . . is inadequate to determine the alien's eligibility to receive an immigrant visa." 22 C.F.R. § 42.63(c). Such information may be provided through Form DS-5535, Supplemental Questions for Visa Applicants. *See* 60-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 88 Fed. Reg. 65,418 (Sept. 22, 2023). Any additional materials

submitted "become a part of the visa application." 22 C.F.R. § 42.63(c). If the applicant produces additional evidence "tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." *Id.* § 42.81(e).

**B. Factual Allegations**

Plaintiff is a U.S. citizen. ECF No. 1 at 1. Plaintiff received approval for a Form I-130 on behalf of his father, Mohammad Dormanesh, who is an Iranian citizen living in Iran. *Id.* at 2. The application was approved by USCIS and forwarded to the NVC. *Id*. On November 7, 2024, plaintiff's father attended an interview in Yerevan, Armenia. *Id*. The consular officer refused his application for administrative processing. *Id*. at 3, 7. Plaintiff's father then completed a questionnaire regarding "a 15-year travel history and details regarding military service." *Id*. at 3. Plaintiff's father "clarified that his mandatory military conscription service in Iran (1983-1985) was performed as a civilian soldier whose sole duty was making educational films." *Id*. (emphasis omitted). The U.S. embassy in Yerevan told plaintiff's father: "Your administrative processing has started and once it is complete you will be notified via email." *Id*. His application has remained in that status since November 7, 2024. *Id*. Plaintiff alleges that the delay in adjudicating his father's visa application has had a substantial impact on their family. *Id.*

Plaintiff brings three causes of action. First, he alleges that defendants' delay violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b). *Id*. at 3-4. Second, plaintiff asks the court to compel the adjudication of his father's visa application pursuant to the Mandamus Act, 28 U.S.C. § 1361. *Id.* at 4. Third, plaintiff alleges that defendants' delay violates his protected liberty interest in the companionship of his father. *Id*.

## Legal Standards

**A. Motion to Dismiss**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

**B. Motion for Summary Judgment**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing either that the materials cited do not establish the presence or absence of a

genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). The nonmoving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**Analysis**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Rule 56. ECF No. 6. Defendants seek dismissal for four main reasons.[1] First, defendants argue that the doctrine of consular nonreviewability precludes judicial review of a U.S. consular official's decision to refuse a visa application of a noncitizen. *Id.* at 11. Second, defendants argue that they do not owe plaintiff a nondiscretionary duty to act since the allocation of consular services is discretionary. *Id.* at 7. Third, defendants argue that the delay plaintiff's father has experienced is not unreasonable under the applicable legal test. *Id.* at 14. Finally, defendants argue that plaintiff's due process claim is foreclosed by Supreme Court precedent. *Id*. at 6.

For his part, plaintiff contests the first three reasons: he argues that the doctrine of consular nonreviewability does not preclude judicial review of this action because his father's visa application has not been finally adjudicated; he asserts that defendants owe his father a nondiscretionary duty to provide a final adjudication on the visa application; and he argues that the delay is unreasonable. *See* ECF No. 9 at 3-5. However, plaintiff does not address defendants' argument that his due process claim is foreclosed by binding precedent. *See id*.

**A. Doctrine of Consular Nonreviewability**

The Ninth Circuit has recognized that "ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018). However, courts in this district and others have held that the doctrine does not apply where plaintiffs seek a final decision on their visa applications rather than judicial review of a final decision. *See Abbassi v. Gaudiosi*, No. 1:23-CV-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May 6, 2024) (citing cases); *Mohamed v. Pompeo*, No. 1:19-cv-01345-LJO-SKO, 2019 WL 4734927, at *2 (E.D. Cal. Sept. 27, 2019).

Accepting plaintiff's allegations as true, defendants' failure to issue a decision on plaintiff's father's visa applications under INA § 221(g) does not amount to a final decision. *See*

[1] I list defendants' proffered reasons in the order in which I discuss them, not the order in which defendants present them.

*Kiani v. Blinken*, No. CV 23-5069-GW-JCX, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024); *Gonzalez v. Baran*, No. 2:21-CV-05902-CAS-ASX, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11, 2022) ("[T]he 'administrative processing' designation [under § 221(g) is] insufficient to constitute a refusal."). In the absence of precedent to the contrary, I find that the doctrine of consular nonreviewability does not bar plaintiff's claims. *See Abbassi*, 2024 WL 1995246, at *4 (agreeing with the "prevailing position among most other district courts" that the doctrine does not bar review of a visa application in administrative processing); *Iqbal v. Blinken*, No. 2:23-CV-1299-KJM-CSK, 2024 WL 3904959, at *7 (E.D. Cal. Aug. 22, 2024) ("The court joins with the courts that have found the refusal of a visa application for administrative processing does not constitute a final decision.").

**B. APA and Mandamus Act**

The INA does not set a deadline for consular officers to review and adjudicate visa applications, but under the APA, defendants have a duty to act within a "reasonable time." *See* 5 U.S.C. § 555. "[T]he APA and related case law provide 'law to apply' in determining whether defendants have failed to act within a reasonable time." *Khan v. Johnson*, 65 F. Supp. 3d 918, 926 (C.D. Cal. 2014). "[F]ederal courts routinely assess the 'reasonableness' of the pace of agency action under the APA." *Id.* (citation omitted). Under the APA, the reviewing court must "compel agency action . . . unreasonably delayed." 5 U.S.C. § 706(1). "A court can compel agency action under this section only if there is a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (cleaned up). "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Id.* at 1075-76 (citation omitted).

The Mandamus Act "provides district courts with mandamus power 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361). "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the

[Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." *Id.* (quoting *Japan Whaling Ass'n v. Am. Cetacean Society*, 478 U.S. 221, 230 n.4 (1986)). "Because the relief sought is essentially the same, in the form of mandamus," courts analyze the sufficiency of the complaint under the APA. *Id.*

In determining whether an agency action has been unreasonably delayed, courts consider the six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138-39 (9th Cir. 2020) (*quoting Telecomms. Research and Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)).

Although not determinative, the first factor, "rule of reason," is the most important. *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). Courts consider the length of the delay and the cause of the delay in assessing "whether there is any rhyme or reason for the Government's delay—in other words, whether the agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21-01960, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (cleaned up). Where Congress has not supplied a period for agency action, courts look to case law in assessing whether the agency's action is unreasonably delayed. *See Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide.").

Here, approximately thirteen months elapsed between the last government action (when the consular officer refused plaintiff father's visa application with the administrative processing designation on November 7, 2024) and the filing of the complaint on December 2, 2025. *See* ECF No. 1. In the context of unreasonable delay involving visa application processing, delay is

measured from the time that the beneficiary attended the interview, not the time that they filed the visa petition. *See Ferdowski v. Blinken*, No. 8:23-cv-01123-JWH-KES, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024) (citing *Shahijani*, 2023 WL 6889774, at *3). Generally, courts have found 'immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Ortiz v. U.S. Dep't of State*, Case No. 22-cv-0508-AKB, 2023 WL 4407569 *8 (D. Idaho July 7, 2023). More than one court has concluded that a delay of slightly more than a year is "drastically short of what constitutes an unreasonable delay in the Ninth Circuit." *Id.* (quoting *Yavari v. Pompeo*, No. 2:19-cv-2524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

To date, approximately twenty months have passed since plaintiff's father's application was initially refused. "[I]n the immigration context, district courts have generally found delays of less than four years are not unreasonable." *Blinken*, 2024 WL 3904959, at *10 (collecting cases). Existing case law supports the view that, however burdensome a delay of twenty months in this context may be, such a delay does not violate the APA. *See Ali v. Ordeman*, No. 2:23-cv-02822 CKD, 2024 WL 2274912, at *6 (E.D. Cal. May 20, 2024); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 162 (D.D.C. 2021) (delay of 29 months at the point of filing suit after being placed in "administrative processing" following consular interview was not unreasonable); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (citing case law suggesting that even a five- to ten-year delay in the immigration context may be reasonable); *Beyene v. Napolitano*, No. 12-cv-1149-WHA, 2012 WL 2911838, at *9 (N.D. Cal. July 13, 2012) (holding that while the "case presents a close call," a delay of nearly five years in adjudicating the plaintiff's application for adjustment of immigration status was not unreasonable); *Jamal v. Johnson*, No 2:15-CV-8088-ODW, 2016 WL 4374773, at *6 (C.D. Cal. Aug. 15, 2016) (noting that delays of four years not unreasonable, but holding that delay of over seven years to adjudicate the plaintiff's application for adjustment of status, combined with defendants' unwillingness to indicate if or when plaintiff's petition will be adjudicated, was unreasonable); *Ou v. Johnson*, No. 15-cv-03936-BLF, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016) (noting that "courts in this district have generally found delays of four years or less not to be unreasonable under the APA"); *Zhang v. Cissna*, No. 18-cv-09696-MWF,

2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) ("[T]he Court cannot conclude, as a matter of law, that [four-year] delay in processing [asylum] application was unreasonable."); *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" after three-year delay for adjustment of status). The first factor thus weighs in defendants' favor.

For the second TRAC factor, the court considers whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1138. Congress has not provided a timetable for processing immigration visa applications. *Cf.* 8 U.S.C. § 1158(d)(5)(A)(ii) (another provision of the INA requiring interviews to "commence not later than 45 days after the date an application is filed" for asylum cases). Rather, "Congress has given the State Department and other agencies wide discretion in the area of immigration processing." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (cleaned up). Here, there is no statutorily mandated timeline for the Department to process plaintiff's visa case. *See Dastagir*, 557 F. Supp. 3d at 166 (noting that there is "no statutory or regulatory timeframe" for processing immediate family immigrant visa applications). Therefore, this factor is neutral. *See Poursohi*, 2021 WL 5331446, at *9 ("[T]he absence of a mandatory timetable for adjudication of Plaintiffs' Application combined with the fact that the delay comports with the rule of reason, the second TRAC factor also weighs in Defendant's favor or is at least neutral.").

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9. Plaintiff alleges that the delay has caused his mother, a U.S. permanent resident, to return to Iran to be with plaintiff's father. ECF No. 1 at 3. He asserts that "[t]he indefinite delay by the Defendants effectively traps an elderly couple (ages 65 and 60) in an active war zone, exposing them to the immediate risk of death or injury." *Id*. Considering the allegations of plaintiff's parents' emotional suffering, in addition to the instability of Iran, I find that this factor cuts in favor of plaintiff. *See Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345, 1363 (E.D. Cal. 2020) (finding the third and fifth TRAC factors in favor of the plaintiff because of the

escalating threats of war between Iran and the United States and the allegations of emotional, physical, and financial harm caused by the separation).

Under the fourth TRAC factor, the court considers the effect of expediting the adjudication of the beneficiary's application on other agency action of higher or competing priority. *Kapoor v. Blinken*, No. 21-cv-1961-BLF, 2022 WL 181217, at *8 (N.D. Cal. Jan. 20, 2022). This factor favors the defendants; plaintiff's family is not alone in their circumstances, and ordering defendants to prioritize plaintiff's father's application only further delays the resolution of other applications. *See Ali*, 2024 WL 2274912, at *6, *Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *5 (W.D. Wash. Apr. 5, 2023) (noting many families face delays and ordering the State Department to schedule the beneficiary plaintiff's interview would not ameliorate the situation); *Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *6 (N.D. Cal. June 16, 2021) ("Most courts have found that the fourth TRAC factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain."). The fourth factor weighs in favor of defendants.

Under the sixth TRAC factor, where a plaintiff has not made cognizable allegations of impropriety, "courts in the Ninth Circuit have found this factor to either weigh in the government's favor or to be neutral." *Poursohi*, 2021 WL 5331446, at *11. Plaintiff has set forth no such allegations, and the sixth TRAC factor weighs neutrally.

After considering the TRAC factors, I find that plaintiff's unreasonable delay claims must fail. Even assuming that the allegations of the complaint are sufficient to satisfy factors three and five, the alleged delay cannot as a matter of law be considered unreasonable at this time. Plaintiff's circumstances are not unprecedented, and courts in this circuit faced with facts similar to those in this case—visa delays measuring under two years while placed in administrative processing—have consistently held that the lawsuits fail under the TRAC factors. *See Ali*, 2024 WL 2274912 at *7 (14-month delay), *Morales v. Mayorkas*, 23-cv-1758 BEN-MSB, 2024 WL 2884554 (S.D. Cal. June 7, 2024) (17-month delay); *Abassi v. Gaudiosi*, 1:23-cv-1573-CDB, 2024 WL 1995246 (E.D. Cal. May 6, 2024) (12-month delay); *Tenorio v. Bitter*, No. 23-cv-1581-

KK-SHKX, 2024 WL 2873754 (C.D. Cal. May 1, 2024) (17-month delay). Accordingly, I recommend that the court grant defendants' motion as to plaintiff's APA claim.

As set forth above, a claim seeking mandamus under the Mandamus Act closely resembles one for relief under § 706 of the APA. *Japan Whaling Ass'n*, 478 U.S. at 230 n.4. Because an adequate remedy exists under the APA, I have analyzed plaintiff's claim of delay under the APA only. *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022). For the reasons set forth above, I also recommend defendants' motion be granted as to plaintiff's Mandamus Act claim.

**C. Due Process**

Plaintiff alleges that defendants' delay deprives him of his protected liberty interest in companionship with his father. ECF No. 1 at 4. However, as noted, defendants have argued that this claim is foreclosed by binding precedent, and plaintiff has not contested that argument. Indeed, the Supreme Court has held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country" because "the asserted right is not a longstanding and 'deeply rooted' tradition in this country." *Dep't of State v. Munoz*, 602 U.S. 899, 909, 919 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Moreover, in a similar context, the Court of Appeals has held that "[b]ecause an adult citizen has no fundamental right to have his or her unadmitted nonresident alien parent immigrate into the United States, [the plaintiff] has no constitutional liberty interest that is protected by the Due Process Clause." *Khachatryan v. Blinken*, 4 F.4th 841, 860 (9th Cir. 2021). Because plaintiff does not have a fundamental right connected to his father's visa application, he cannot state a due process claim, and defendants' motion should be granted as to this claim.

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss and for summary judgment, ECF No. 6, be GRANTED.

2. The Clerk of Court be ordered to enter judgment accordingly and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: July 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE